# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:12-CR-12 |
| v. | : | Hon. John E. Jones III |
| JULIUS MATHIS, | : | |
| Defendant. | : | |

## MEMORANDUM & ORDER

### July 15, 2013

Pending before the Court are the Defendant's objections to the Presentence Investigation Report ("PSR") prepared by the United States Probation Office. The objections have been fully briefed in the parties' sentencing memoranda and are ripe for our disposition. For the reasons that follow, the Defendant's objections to Paragraphs 37 and 42 of the PSR shall be sustained.

## I. PROCEDURAL HISTORY

On August 22, 2012, Defendant James Mathis ("Defendant") entered a plea of guilty to Count II of a three-count Indictment which charged him with making false statements in the acquisition of firearms in violation of 18 U.S.C. § 922(a)(6). By written plea agreement, the parties stipulated that the offense involved more than eight but less than twenty-four firearms; that a four-level enhancement is applicable pursuant to U.S.S.G. § 2K2.1(b)(4)(B) because at least one firearm had

1

an obliterated serial number; and that a role enhancement is not warranted. The Probation Office prepared a PSR which concluded that the Guideline custody range is 63 to 78 months imprisonment. In reaching that recommendation, the probation officer concluded that a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(5) is warranted because the Defendant engaged in the trafficking of firearms. The PSR further recommends that the Court deny the Defendant any reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 because the Defendant has accrued state criminal charges since the time of his guilty plea.

On November 5, 2012, the Defendant, through his counsel, filed several objections to the PSR, challenging specifically paragraphs 37 and 41, which recommend that the trafficking enhancement be applied; paragraph 42, which denies the Defendant a reduction for acceptance of responsibility; and paragraphs 85 and 86, which indicate that no circumstances warrant a downward departure. The Defendant asserts that the trafficking enhancement is inapplicable because he did not know, nor did he have reason to know, that his conduct would result in the unlawful transfer of a firearm to an individual whose possession thereof would be unlawful, and that despite the pending state charges, he should receive the benefit of the § 3E1.1 reduction for acceptance of responsibility. The Court conducted a

presentence conference in Chambers on December 17, 2012, at which time the parties discussed the Defendant's objections and indicated that a factual hearing is necessary to aid in resolution of the objection to paragraph 37; the parties and the Court agreed that the remaining objections regarding the Defendant's request for a downward departure and acceptance of responsibility could be addressed in their sentencing memoranda.

On February 22, 2013, the Court conducted an evidentiary hearing with regard to whether the Defendant had trafficked in firearms, subjecting him to the four-level enhancement. Thereafter, we issued a briefing schedule and directed the parties to address therein both the outstanding objections and the salient 18 U.S.C. § 3553(a) factors as they pertain to the Defendant. Pursuant to that directive, the Defendant filed an omnibus sentencing memorandum on May 15, 2013 (doc. 87) and the Government filed a responsive submission on July 5, 2013 (doc. 91). All issues having been sufficiently addressed by both parties, we now write to resolve the Defendant's objections regarding the enhancement for trafficking in firearms and the denial of acceptance of responsibility.[1]

## II. STANDARD OF REVIEW

---

[1] Consistent with our usual practice, the Court will reserve ruling on the Defendant's request for a downward departure until the time of sentencing.

In *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit reaffirmed that the burden of proof for facts relevant to sentencing is a preponderance of the evidence. Therefore, we are "free to consider relevant conduct, including conduct resulting in acquittal, that was proved by a preponderance of the evidence in determining [the Defendant's] sentence within the original statutory sentencing range." *United States v. Jiminez*, 513 F.3d 62, 88 (3d Cir. 2008). Accordingly, we shall apply a preponderance of the evidence standard to the facts at issue.

## III. DISCUSSION

### A. Firearms Trafficking Enhancement

The Defendant argues that the four-level sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(5) for firearms trafficking does not apply to him. U.S.S.G. § 2K2.1(b)(5) provides for a four-level enhancement in the Defendant's offense level if it is determined that "the defendant engaged in the trafficking of firearms." *Id.* Application Note 13(A) provides further guidance as follows:

> (A) *In General.*—Subsection (b)(5) applies, regardless of whether anything of value was exchanged, if the defendant—
>
> (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or

> > otherwise dispose of the firearms to another individual; and
>
> > (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—
>
> > > (I) whose possession or receipt of the firearm would be unlawful; or
> > >
> > > (II) who intended to use or dispose of the firearm unlawfully.

*Id.*, cmt. 13(A). The Defendant concedes that the first element is met and admits that he transferred two or more firearms to co-Defendant, James Miller ("Miller"); the Defendant disputes, however, that he knew or had reason to know that Miller's possession or receipt of the firearms would be unlawful or that his intent was to use or dispose of the firearms unlawfully.

    Our resolution of this objection requires a review of the testimony taken and evidence received during our February 22, 2013 evidentiary hearing. During that proceeding, the Government called Special Agent Michael Culp of the United States Bureau of Alcohol, Tobacco, and Firearms, who was involved in the law enforcement investigation of the Defendant and Miller. Culp testified that the Defendant gave a statement which indicated that he was aware that Miller's street name was "Pops" and that he knew that the moniker stood for "Pops On People;"

that the Defendant knew that Miller sold drugs and in fact their relationship began with the Defendant selling drugs for Miller; that the Defendant was recorded on October 21, 2013, after his initial contact with law enforcement and while acting as a confidential informant, asking Miller if all of the serial numbers had been scratched off of the guns.[2] The Government presented no direct evidence that the Defendant knew the ultimate destination of the firearms, but instead argues that this evidence, viewed collectively, establishes that the Defendant should have known that the firearms were destined for an unlawful purpose.

      The Defendant then took the stand and conceded that he was aware that Miller sold cocaine and marijuana and that he sometimes sold those drugs for him; he also admitted that Miller had explained what the nickname Pops meant, but stated that he had no independent knowledge that Miller had ever shot anyone. The Defendant maintained that he knew little about Miller's other activities. The Defendant also admitted that he knew, at the time he was acquiring the firearms and transferring them to Miller, that his co-Defendant was making frequent trips to New York and taking the firearms with him. The Defendant explained that he was

---

[2] The Government relies heavily on these recorded conversations where the Defendant probed Miller about obliteration of serial numbers. Those conversations, however, post-date the Defendant's first contact with law enforcement. Indeed, the Defendant was at that time operating as a confidential informant and his conversations with Miller were coached by investigators. We thus reject the Government's contention that these recorded conversations reflect the Defendant's actual knowledge at the time he committed the instant offenses.

under the impression that Miller was visiting family, specifically a son, on these trips and maintained that he was not aware that the firearms were being transferred to others in New York or elsewhere. The Defendant also testified that on at least one occasion, he and Miller visited a shooting range together and Miller had in his possession several of the firearms that the Defendant had transferred to him, leading the Defendant to believe that Miller was a gun collector.

From this evidence adduced during the hearing, the Government encourages the Court to conclude that the Defendant knew, or had reason to know, that Miller intended to use or otherwise dispose of the firearms unlawfully, asserting that the sheer volume of firearms—sixteen in all—in conjunction with the Defendant's knowledge that Miller was a drug dealer who frequently traveled to New York is sufficient to establish that he knew or should have known that Miller would use or dispose of the firearms unlawfully. Ultimately, however, from our review of the totality of the evidence, we are constrained to disagree with the Government.

While a reasonable person might infer from the evidence that the Defendant could have ventured guesses as to the firearms' ultimate destinations, the burden of proof on the Government in order to obtain this substantial enhancement is more stringent. Here, the Government has shown only that the Defendant knew that his co-Defendant sold illegal drugs, that he had a self-imposed street nickname which

implied that he was involved in shootings previously, and that he traveled frequently to and from New York, where he had a son. This evidence, especially when counterbalanced with the Defendant's uncontroverted testimony that he had seen the firearms in Miller's continued possession after the transfers, simply does not prove that it is more likely than not that the Defendant knew, or should have known, that the firearms were going to be disposed of unlawfully. For this reason, the Court will sustain the Defendant's objection, concluding that the four-level firearms trafficking enhancement does not apply to the Defendant's offense conduct.[3]

### B. Acceptance of Responsibility

The parties next dispute whether the Defendant is entitled to a reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. In the PSR, it is recommended that the Court deny the Defendant such a reduction. The probation officer notes that while the Defendant has pled guilty and made admissions with regard to the conduct underlying the instant federal charges, he obtained new firearms and assault charges while released on bail, conduct which is

---

[3] We note that the Government also contends that because Miller did not object to application of the trafficking enhancement in his case, based on their respective conduct, the enhancement is "clearly appropriate" for both Defendants. We disagree. While the Defendants clearly participated in the same criminal scheme, their roles and offense conduct vary greatly, as observed by defense counsel in her sentencing memorandum. For that reason, we decline to impute the enhancement applied in Miller's case to the Defendant here.

not consistent with the acceptance of responsibility. The Defendant posits that because he has not yet pled guilty to or been convicted of those charges, they alone are an insufficient basis for withholding the acceptance reduction.

The comments to § 3E1.1 encourage a court to consider numerous factors in deciding whether to reward a defendant for acceptance of responsibility, including truthfully admitting to the offense of conviction, voluntary termination of all criminal conduct, voluntary surrender to authorities following commission of the underlying offense, and post-offense rehabilitative efforts. Courts interpreting § 3E1.1 have held that a sentencing judge has discretion to consider pre-sentencing conduct unrelated to the underlying offense, including post-indictment unlawful conduct, in determining whether to grant a reduction for acceptance. The Third Circuit has previously considered the adequacy of a pre-sentencing arrest record as a basis for denying acceptance and concluded as follows:

> It is undisputed that a "defendant's post-offense conduct can shed significant light on the genuineness of a defendant's claimed remorse." In *United States v. Berry*, however, we vacated the sentences of two individuals and held that "a bare arrest record – without more – does not justify an assumption that a defendant has committed other crimes and it therefore can not [sic] support increasing his/her sentence in the absence of adequate proof of criminal activity."
>
> Even though, in *Berry*, we supported our decision with cases that involved upward departures, our holding, by its terms, applies more broadly. We said that "unsupported speculation

9

> about a defendant's background is problematic whether it
> results in an upward departure, denial of a downward
> departure, or causes the sentencing court to evaluate the §
> 3553(a) factors with a jaundiced eye." We were careful to
> note, however, that "appellate courts do permit consideration
> of the underlying conduct where reliable evidence of that
> conduct is proffered or where the PSR adequately details the
> underlying facts without objection from the defendant." In
> that vein, we also said that a bare arrest record could support
> a sentencing enhancement in limited circumstances in which
> the records of arrest themselves may indicate reliability.

*United States v. Carthens*, 427 Fed. Appx. 216, 220-221 (3d Cir. 2011) (internal citations omitted). The Third Circuit Court of Appeals has frequently remanded cases to the district courts for further consideration where those courts have relied *solely* on a post-conviction arrest in denying defendants a reduction for acceptance of responsibility. *See United States v. Dussan*, 378 Fed. Appx. 166, 168-69 (3d Cir. 2010); *Carthens*, 427 Fed. Appx. at 221. Instead, we are directed to consider the totality of the circumstances in deciding whether a defendant has accepted responsibility for the underlying crime. *United States v. McDowell*, 888 F.2d 285, 293 n.2 (3d Cir. 1989) ("[J]udge has the obligation to assess the totality of the circumstances in determining whether the defendant accepted responsibility.").

The Government broadly asserts that because the Defendant has been arrested in the interim between his guilty plea and sentencing, he is automatically to be denied an acceptance reduction. The Government's argument, however, fails

to take into account the Defendant's plea of guilty; the substantial assistance he provided to law enforcement after his arrest, including his work as a confidential informant which resulted in his co-Defendant's arrest; the statements he gave to law enforcement upon his arrest and the timeliness of his cooperation; and his expressions of remorse and acceptance of responsibility in his interview with the probation officer. While post-conviction unlawful conduct is undeniably relevant consideration in our analysis, it is only one aspect thereof.[4] When the Defendant's pending—and importantly, unadjudicated—criminal charges are balanced with his substantial cooperative efforts on the whole and his expressions of acceptance, the greater weight of the § 3E1.1 factors falls more heavily in favor of granting the sought reduction for acceptance of responsibility. Accordingly, the Defendant's objection to Paragraph 42 of the PSR will be sustained.

## IV. CONCLUSION

For the reasons fully articulated above, we shall sustain the Defendant's objections to Paragraphs 37 and 42 of the PSR and adjust his offense level and sentencing guideline range accordingly. As noted, the Court will defer ruling on

---

[4] Moreover, absent a proffer from the Government that would allow us to evaluate the facts undergirding the arrest in detail, we are left with the fact of pending criminal charges and little more. Consistent with the Circuit's precedent as noted, this is not enough to deny acceptance of responsibility.

the Defendant's request for a downward departure as a result of his physical condition until the time set for the Defendant's sentencing.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Defendant's objections to Paragraphs 37 and 42 of the Presentence Investigation Report are **SUSTAINED**, resulting in an **adjusted offense level of 19** and an adjusted Sentencing Guidelines imprisonment range of thirty **30 to 37 months**.

2. The Defendant shall be sentenced on August 1, 2013, at 1:30 p.m., in Courtroom #2, Harrisburg, Pennsylvania.

s/ John E. Jones III<br>John E. Jones III<br>United States District Judge